## FELIÚ *v*: NARVÁEZ.

APELACIÓN procedente de la Corte de Distrito de San Juan.

No. 97.—Resuelto en marzo 4, 1907.

APELACIÓN—PLIEGO DE EXCEPCIONES—RELACIÓN DE HECHOS—APROBACIÓN DEL JUEZ.—La aprobación del juez á un pliego de excepciones ó relación de hechos no debe hacerse por medio de una resolución de la corte, sino en forma de certificación oficial, debidamente firmada por el juez al pie de dichos documentos.

APELACIÓN—ALEGACIONES—EXCEPCIONES—NUEVO JUICIO.—No hay precepto alguno legal que impida fundamentar una acción en una cuenta de la que forme parte, como primera partida, un pagaré, pero aún cuando pudiera excepcionarse la demanda por tal motivo, la axcepción debe formularse oportunamente ante la corte inferior, y no en apelación como razón para que se conceda un nuevo juicio

ID.—PRESCRIPCIÓN—PRUEBAS.—Si una parte desea oponer como defensa la prescripción, debe alegarla especialmente, ya en excepción previa ó en la contestación, pero no puede valerse de esta defensa para usarla como *objeción á la admisión de prueba*, ni pueden estas objeciones formularse por primera vez en la apelación, sino ante la corte inferior, debiendo estimarse renunciadas cuando no se hubieren formulado ánte dicha corte.

ID.—CAUSA DE ACCIÓN—LIQUIDACIÓN DE SOCIEDAD Y ADJUDICACIÓN EN PAGO DE PARTICIPACIÓN SOCIAL.—Liquidada una sociedad y hecha adjudicación de determinadas obligaciones existentes á favor de la sociedad, á uno de los socios de la misma en pago de su participación en el haber social, dicho socio tiene plena capacidad para proceder á su cobro y demandar judicialmente el cumplimiento de las mismas.

ID.—ADMISIÓN DE PRUEBA IMPERTINENTE.—En los casos en que el juicio se hubiere celebrado ante la corte sin intervención de jurado, es muy difícil que la admisión de prueba impertinente se considere error fundamental, pues es de presumir que el juez ha considerado la prueba pertinente y hecho caso omiso de la impertinente para la resolución del caso; el perjuicio que el error en su admisión pueda haber causado, debe demostrarse plenamente para justificar la revocación de la sentencia.

ID.—PRUEBA CONTRADICTORIA.—La apreciación de la prueba es facultad que tiene la corte inferior, y en los casos de declaraciones contradictorias, la corte inferior debe resolver el conflicto, y no procederá la revocación de la sentencia á no ser que el tribunal de apelación, al examinar la prueba, encuentre que hay falta absoluta de prueba para justificar la sentencia.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Manuel F. Rossy.*

Abogado del apelado: *Sr. Freyre Barbosa.*

EL JUEZ ASOCIADO SR. MACLEARY, emitió la opinión del tribunal.

Esta es una demanda entablada para el cobro de dinero. Dicha demanda fué presentada el 19 de noviembre de 1904, consignándose en ella la suma que el demandado debía al demandante, y solicitándose del tribunal, sentencia á favor del demandante, por la cantidad de setecientos dollars y noventa y cuatro centavos ($700.94) por intereses y costas.

A debido tiempo se presentó la contestación, alegando que la suma reclamada por el demandante, ascendía á setecientos treinta y cuatro dollars y noventa y cuatro centavos ($734.94), y negando que la deuda llegase á semejante cantidad y negando también la autenticidad del pagaré en que se fundaba, en parte, la demanda. Este error, en cuanto á la cantidad, era debido al hecho de no haberse notado un abono que se había hecho en la cuenta, según ha sido consignada anteriormente.

El demandante presentó, junto con la demanda, un pagaré por novecientos diez y seis dollars y diez y ocho centavos ($916.18), y una cuenta, cuya primera partida es el citado pagaré, y cuyo saldo ó balance cerrado en 14 de enero de 1904, es de $700.94; siendo el total $730.94, de cuya suma hay que rebajar un abono de $30.00 por cuenta de una remesa de café.

Al negarse el tribunal, á admitir el pagaré, el demandante presentó una cuenta que contenía muchas partidas, y que comprendía el período desde el 15 de abril de 1889 hasta el 17 de febrero de 1897, y cuyo saldo, en esta última fecha, era de $916.18, ó sea la misma cantidad expresada en el pagaré.

En el acto del juicio, el tribunal oyó las declaraciones de los testigos de ambas partes, que son como siguen:

"Luis Feliú declaró que tuvo en Bayamón dos sociedades mercantiles cuyos gestores eran Luis y Mariano Feliú, hasta el año 1903, en que se separaron, y además formó parte de la primera sociedad Doña Francisca Munich; que Narváez tuvo cuentas con la primera sociedad las que alcanzaban á $700 al disolverse dicha sociedad; que Narváez otorgó un pagaré por dicha suma, que fué firmado á su petición, por un barbero de apellido Tolmo, hallándose presentes el declarante, su socio, el barbero y Narváez, y pasando el activo á la nueva sociedad; que Tolmo reconoció el pagaré y que éste fué firmado en 1897; que siguió la cuenta de Narváez, tomando éste lo que necesitaba, y remitiendo café á la tienda; que se le daba recibos á Narváez por el café que mandaba; que la sociedad de L. Feliú y Ca. se disolvió en 1903, y que el documento se firmó en 1897, y que el demandado siguió tomando en la casa lo que necesitaba, y abonando; que la liquidación y firma del documento lo verificó porque era costumbre en el comercio todos los años liquidar las cuentas, y hacer documentos; que no siguieron esa costumbre con el demandado, porque éste iba trayendo poco á poco, siguiendo la cuenta corriente; que á esa cuenta se cargaba el 1% de interés.

"El testigo Ventura Tolmo declaró que el pagaré fué hecho en los momentos en que él iba á la tienda á afeitar á los clientes, y como Narváez no sabía firmar, Don Luis le preguntó si quería que el declarante firmara por él; y como contestara que sí, firmó por él; que el testigo leyó en ese acto el documento antes de firmarlo, y que nunca ha firmado otro documento á favor de Feliú, por personas que no saben firmar; que Narváez y Luis Mariano Feliú, estaban presentes cuando se firmó el documento; que Narváez se enteró de la cantidad que figuraba en el documento; que Narváez no sabe leer, y por eso le fué leido el documento, y cuando se lo preguntó á Narváez, si estaba conforme con la cantidad del documento, contestó que estaba conforme con ella.

"El testigo Carlos Valldejuli declaró que en noviembre del año pasado, le dió una carta Don Mariano Feliú para que fuese donde

Narváez, á cobrar una cantidad de dinero; y que Narváez, á quien conoció por primera vez en aquella ocasión, le dijo que no podía arreglar, pero que el día 15 vendría al pueblo á arreglar la cuenta con Don Mariano; que desconoce el documento é ignora si Narváez sabe escribir; que Feliú le dijo que podía rebajar de la cuenta, como cien dollars para ver si podía llegar á un arreglo, y que ignoraba el montante de la cuenta.

"El demandante presentó, como prueba, el pagaré y la cuenta corriente, á lo cual se opuso el demandado; y la corte negó la admisión de dicha cuenta por no estar jurada por la persona que la había hecho.

"También presentó el demandante, como prueba, la escritura de disolución de la sociedad L. Feliú y Ca., por la cual quedó hecho cargo de la liquidación el socio Luis Feliú. Dicho documento fué aceptado por el demandado, como prueba.

"Lúcas Narváez no reconoció, en su declaración, el citado pagaré, y dijo que no conocía á Ventura Tolmo, ni le había autorizado para que firmase por él dicho documento; que los Feliú no le habían pasado ninguna cuenta, ni le habían llamado para liquidarla; que él hacía compras á los Feliú, y les pagaba con café y saldó su cuenta; que hace muchos años no sale de su casa, y que su hijo Julián es el que sale á hacer las compras para él; que no le dieron recibos cuando pagaba con café; que saldó su cuenta, pero que van para cuatro años, antes del ciclón, y de ahí para acá le siguió comprando al demandante, y trayéndole frutos.

"Julián Narváez declaró que sabe leer y escribir, y que firma por su padre cuando éste se lo exige, y que es su deber, hacer las compras y traer los frutos; que los Feliú nunca le hablaron de hacer algún documento para que él lo firmara; que su padre tenía cuentas en casa de los Feliú, pero antes del ciclón.

"El demandado presentó un informe del perito tenedor de libros, Guillermo Wolkers, que dice que examinó una cuenta corriente de Narváez, seguida con Feliú Hermanos y Ca., desde el 15 de abril de 1889 hasta el 1º. de junio de 1892, y con los Sres. L. Feliú y Ca. desde el 24 de agosto hasta el 17 de febrero de 1897. Que dicha cuenta, fechada en 27 de diciembre de 1905, expresa haber sido tomada de los libros de las expresadas sociedades, por Don Mariano Feliú, como liquidador de la razón social L. Feliú y Ca., que del examen resulta que la cuenta de Don Lúcas Narváez no consta en los libros Mayor y Diario de los Sres. L. Feliú y Ca., correspondientes á los años 1892 á 1897; que la cuenta ha sido copiada con distintas variaciones y

balances de unos libros que no están autorizados por el Juzgado; que en esos libros aparece una cuenta de Don Lúcas Narváez, y de ellos parece haber sido sacado el extracto de la cuenta; después de haber consignado en el informe varias cifras y hechos, dicho informe termina diciendo que la cuenta sacada de los libros llamados "auxiliares" no es igual á la copia, y el saldo también es distinto; y siendo el saldo de los libros $961.17 y el de la cuenta $916.18; que, requerido el perito, para confrontar la partida de los libros Diario y Mayor, con el valor de un pagaré que fué otorgado por Don Lúcas Narváez, en 17 de junio de 1897, por $916.18, á favor de los Señores L. Feliú y Ca., no ha encontrado ningún asiento ni entrada que se refiera á dicho pagaré, ni á su importe, y que el balance, en esa fecha, de la cuenta de Don Lúcas Narváez, llevada en los libros auxiliares, era de $916.17.

"Al perito del demandante, Pedro Curet, se le entregó la cuenta corriente arriba mencionada, y él declaró que no hay libro de caja, pero en el libro mayor hay una cuenta de caja, y que al examinar dicha cuenta de caja, junto con los libros auxiliares 8 y 9, que se relacionan con la cuenta de Narváez, encontró varias partidas, que consigna detalladamente, exponiendo al mismo tiempo que el asiento de 24 de agosto de 1892, era igual en la cuenta y en el libro, pero no lo era en detalles; que el 24 de agosto de 1892, figura con las mismas cantidades en la cuenta y en el auxiliar, pero en la cuenta dice: "por mercancías," y en el libro dice: 'intereses de un año vencido'; que entre las partidas del 8 de marzo de 1893 existe la misma diferencia; que en marzo 29, 1894, la cuenta dice: 'efectivo, $25, efectos, $4.50, total, $29.50'; y el libro dice: 'efectivo, $25, intereses, $4.50; y se ha demostrado que las mismas diferencias existen al través de los diferentes años, y con fecha 31 de enero de 1894, se encuentra una partida de $230 cargada al debe, y á su lado tiene una P. escrita, que en contabilidad quiere decir que ha sido saldada; que hay otra partida en 1895, una de $107.70, otra de $200, y otra de $2.60, correspondientes, las dos primeras, á entregas en efectivo, y la última, á efectos; que entre los diferentes libros existe un libro mayor y un diario, el cual no tiene certificación del Juzgado, y en el mayor no hay ninguna cuenta de Lúcas Narváez; también declaró el perito que la suma de $230 no está cargada dos veces, que ha sido cargada y abonada, y que uno de dichos asientos tiene á su lado una P. escrita con lápiz, lo que significa que ha sido pagada dicha cantidad.

"El perito Wolkers declaró que había hecho su examen, confrontando la cuenta con el diario, el mayor y los libros auxiliares; que

el mayor es el resumen del diario, y que los libros auxiliares son permitidos en las casas de comercio cuando están autorizados por el juez; que el libro de caja es para anotar la entrada y salida de dinero, etc.; que los dos libros principales, estaban bien llevados, y los auxiliares muy mal, y éstos no corresponden con aquéllos, ni parcial ni totalmente, porque la cuenta de Narváez ni la operación á que hace referencia la cuenta, ni las partidas de intereses, ni las de efectos, aparecen en los principales; que ratifica en todas sus partes el informe escrito; que la fecha de 1904 es un error, y debe ser 1894. Al preguntar el juez al perito, si había diferencia entre la cuenta corriente en los libros y la presentada, contestó que había, siendo el balance en los libros, de mayor importancia, siendo la diferencia á favor de Lúcas Narváez. Habiendo manifestado la corte al perito, que la demanda presentada era en cobro de $700, y se presentó junto con la demanda una cuenta corriente, cuya primera partida es de $916 y después aparece la cuenta detallada que viene á terminar con un saldo de $700.94, contestó el perito que aparecía este saldo por haberse abonado después $30 que hubo que rebajar, habiendo manifestado también la corte al Perito, que la cuenta jurada llegaba hasta el año 1897, y que había otra cuenta, que es en la que se funda la demanda, que empieza en 17 de febrero de 1897, y termina en 14 de enero de 1904, contestó el Perito ser cierto, y que dicha última cuenta viene bien con los libros auxiliares, no habiéndola examinado cuando presentó su declaración jurada.''

La corte de distrito aprobó la relación de hechos y la exposición del caso, por una resolución dictada en 27 de septiembre de 1906. (Véase la página 20 de los autos.) Este no es un procedimiento adecuado. Esos documentos, lo mismo que los pliegos de excepciones, deben ser firmados oficialmente por el juez sentenciador, después de haber sido aprobados.

En 20 de septiembre de 1906, el tribunal también negó la solicitud de nuevo juicio. (Véanse los autos, páginas 20 y 21.)

En 21 de diciembre de 1906, el tribunal dictó sentencia definitiva contra el demandado, por la suma de $700.94, intereses y costas. (Véase la página 21 de los autos.)

En 10 de octubre de 1906 el demandado interpuso recurso de apelación contra la resolución, negando la solicitud de nuevo juicio. (Véase la página 22 de los autos.)

La copia de los autos, certificada por el abogado del apelante, fué presentada en este tribunal, el 15 de noviembre de 1906.

La apelación ha sido interpuesta únicamente contra la resolución, negando la solicitud de nuevo juicio; apareciendo de los autos, que se ha desistido de la apelación que, según aparece, se había pensado, al principio, interponer contra la sentencia misma.

Ambas partes presentaron alegatos en este tribunal, y en el acto de la vista, informaron oralmente, citando autoridades. El caso fué sometido á la consideración del tribunal, el 20 de diciembre de 1906; concediéndosele al apelante permiso para presentar una memoria, además de su alegato. El tribunal tomó el caso en consideración, discutiéndolo cuidadosamente.

El abogado del apelante sostiene que el tribunal debía haber concedido la moción de nuevo juicio, por los siguientes motivos:

1º. Por los defectos que aparecen en la misma demanda, según se presentó en el caso, en su forma original.

2º. Porque la prueba que se presentó en el caso, tomada en relación con la demanda, demuestra claramente: (*a*) Que no hay causa de acción; (*b*) Que hay defecto de partes; (1º.) Porque el demandante no tiene capacidad en el presente caso, para entablar una demanda; (2º.) El no debió haber sostenido su acción, según las pruebas, puesto que no está interesado en la cosa, objeto del pleito.

La *primera* objeción, es decir, la que se hace contra la demanda, se funda en que ésta ha sido entablada con motivo de una cuenta, en la cual figura, como primera partida, un pagaré.

No hay nada en nuestro Código de Enjuiciamiento que impida semejante proceder. Pero si la excepción fuera buena, debía habérsela interpuesto oportunamente ante el tribunal sentenciador, y ya es demasiado tarde cuando se la presenta ante este tribunal por primera vez. Tomando el caso en la forma en que nos ha sido presentado, debemos considerar que la demanda es suficiente.

El *segundo* punto alegado á favor del apelante, es que no debía haberse admitido el pagaré como prueba, porque estaba excluído de la prueba por la Ley de Prescripción. Dicha Ley no puede utilizarse como defensa en esta forma. Es preciso alegarla especialmente, ó mediante excepción previa ó en la contestación, y de no ser alegada así, se presume que el demandado haya renunciado al derecho de invocar dicha ley, en su defensa. A algunas personas les repugna en sumo grado, valerse de dicha defensa, y ellos ponen en duda la moralidad, de semejante proceder. Nosotros no estamos de acuerdo con tales ideas; pero la ley exige que el demandado invoque en sus alegaciones el Estatuto de Prescripción, si se decide á valerse de su defensa, y no puede hacer uso del mismo, como objeción contra la prueba.

La otra objeción contra la admisibilidad del pagaré, á saber, que el otorgante negó su otorgamiento, es igualmente fútil, puesto que la mayoría de las pruebas está en favor del hecho de que dicho pagaré ha sido firmado con su autorización.

La *tercera* objeción, ó sea la dirigida contra la cuenta, con motivo de la cual se ha entablado la demanda, está también, en parte, basada en la Ley de Prescripción, y las mismas observaciones que se han hecho anteriormente con respecto al pagaré, son aplicables á la cuenta. En cuanto á aquella parte de la objeción, que se funda en las disposiciones del Código de Comercio, diremos que dichas disposiciones no son aplicables al presente caso, por la razón de que las partidas fueron aprobadas por las declaraciones de los testigos, independientemente de los libros de contabilidad. Además, esas objeciones no se hicieron oportunamente ante el tribunal inferior.

El *cuarto* punto que se alega, á saber, que los libros mismos eran la mejor prueba, y que debían haberse presentado en el acto del juicio, pudiera haber sido una alegación buena, con tal que se hubiera hecho en el acto del juicio, al presentarse

las cuentas; pero no habiéndose alegado dicho punto oportuna-mente, debe presumirse que ha sido abandonado.

La *quinta* alegación hecha por el abogado del apelante, es que el demandante no ha demostrado ningún derecho para entablar esta demanda. A esto se puede contestar fácilmente que, al liquidarse el negocio de la sociedad, le cupo en suerte la citada cantidad, cuya reclamación estaba aún pendiente, y él tenía derecho de entablar una demanda, y de cobrar dicha suma en su propio nombre. De ningún modo hubiera podido demostrarse derecho alguno que fuera mejor que éste.

El *sexto* error de que se queja el apelante, no es un error importante; y puesto que la causa fué juzgada únicamente por el tribunal, dicho error no pudiera haber perjudicado los intereses de dicho apelante. Y se puede decir en general, que cuando un juez conoce de una causa sin la intervención de un jurado, la admisión de pruebas será rara vez considerada como un error de importancia; puesto que se presume que el tribunal después de haber admitido todas las pruebas, separa aquéllas que son pertinentes, de las que no son importantes ó á propósito, desechando estas últimas al formular su sentencia. Se debe demostrar claramente la importancia de tales errores, para justificar la revocación de una sentencia.

El *séptimo* y. último motivo alegado por el. apelante, por qué el tribunal de distrito debió haber concedido un nuevo juicio, es que la prueba es contradictoria por completo, y en ningún modo suficientemente exclusiva para que esté de acuerdo con la doctrina de que "el que desee sostener un pleito, tiene que probar." Era de la incumbencia del juez sentenciador, apreciar la prueba y conciliar cualesquiera contradicciones que pudieran encontrarse en las declaraciones de los testigos presentados al tribunal, y á no ser que esta corte, al revisar dichas declaraciones, encuentre una falta absoluta de pruebas, no se puede revocar la sentencia. A nosotros nos parece que estaba justificada la conclusión formulada por el tribunal, y que éste ha logrado hacer verdadera justicia en

su decisión. El demandado debía al demandante dinero por efectos que éste le había vendido y entregado. Había una disputa con respecto á la cantidad; el tribunal sentenciador ha oído las declaraciones de los testigos, y 'ha considerado dichas declaraciones y después de la debida deliberación, ha llegado á una decisión. En esta apelación, no se nos ha presentado nada que pudiera quebrantar la confianza propiamente dispensada á las sentencias de los tribunales sentenciadores. Después de haber considerado detenidamente todos los puntos presentados, hemos llegado á la conclusión de que la sentencia debe ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Quiñones y Asociados, Hernández y Figueras.

El Juez Asociado, Sr. Wolf, no intervino en la resolución de este caso.