

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| VDE Corporation, Iván F. Tort<br><br>        Recurridos<br><br>              v.<br><br>F & R Contractors Inc.<br><br>        Peticionario<br><br>Jorge Pierluisi; Banco Santander de Puerto Rico<br><br>        Recurridos | Certiorari<br><br>2010 TSPR 210<br><br>180 DPR \_\_\_\_ |

Número del Caso: CC-2009-882


Fecha: 15 de octubre de 2010


Tribunal de Apelaciones:

        Región Judicial de San Juan Panel IV


Jueza Ponente:        Hon. Luisa M. Colom García


Abogado de la Parte Peticionaria:
                Lcdo. Edgardo L. Rodríguez Cardé


Abogado de la Parte Recurrida:
                Lcdo. Edilberto Berríos Pérez


Materia: Sentencia Declaratoria, Entredicho Provisional, Injuction Preliminar y Permanente

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| VDE Corporation, Iván F. Tort | *Certiorari* |
| Recurridos | |
| v. | |
| F & R Contractors Inc. | CC-2009-0882 |
| Peticionario | |
| Jorge Pierluisi; Banco Santander de Puerto Rico | |
| Recurridos | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

En San Juan, Puerto Rico, a 15 de octubre de 2010.

Nos compete revisar una Resolución emitida por el Tribunal de Apelaciones que denegó expedir un auto de *certiorari* solicitado por F&R Contractors, Inc., para revisar una Orden dictada por el Tribunal de Primera Instancia, mediante la cual, dicho foro emitió una orden de *injunction* preliminar en la que le ordenó al Ing. Jorge Pierluisi Díaz, (árbitro del procedimiento de arbitraje entre F&R Contractors, Inc., y VDE Corporation), que cesara y desistiera de continuar con el proceso de arbitraje y la ventilación de las controversias no adjudicadas en el Laudo Parcial.

Además, se presenta como interrogante a este recurso, si un laudo parcial puede cumplir con el principio de finalidad de los laudos de arbitraje para efectos de revisión ante los foros judiciales, sin la necesidad de que el árbitro resuelva la totalidad de las controversias que se le presentan para adjudicación. A continuación, veamos los hechos que dieron génesis a la controversia aquí trabada.

**I**

El 1 de abril de 2005, VDE Corporation, en adelante, VDE o la recurrida, y F&R Contractors Inc., en adelante, F&R o la peticionaria, suscribieron un Contrato de Construcción de un complejo de viviendas tipo *walk up* en el Municipio de Gurabo. En la Cláusula 7.6.11 del Anejo A del Contrato de Construcción suscrito entre las partes, se pactó un procedimiento de arbitraje para resolver cualquier disputa o reclamación que surgiera en cuanto a la ejecución de los trabajos dentro del ámbito del mencionado Contrato o con cualquier cuestión contractual.[1]

Así las cosas, el 14 de junio de 2007, VDE inició un proceso de arbitraje con F&R a fin de resolver varias controversias surgidas entre las partes. Comenzado el

---

[1] El Art. 7.6.11 del Anejo A del Contrato de Construcción convenido entre las partes reza en lo pertinente:

> Quality and time are of the essence in the performance of the work referred to in this Contract and every dispute, or claim, regarding any of these, or any other contractual matter, shall be decided by arbitration as per procedures established in this article, or in any other way that is mutually agreeable between Owner and Contractor. Véase, Apéndice de *Certiorari*, pág. 181.

procedimiento, VDE declaró a F&R en incumplimiento y terminó el Contrato de Construcción con ésta. Las partes voluntariamente decidieron designar al Ing. Jorge A. Pierluisi Díaz como árbitro.

Luego de varios trámites procesales, el 7 de agosto de 2008, las partes suscribieron una Estipulación a fin de extender hasta el 22 de septiembre de 2008 el término que tendría el árbitro para rendir el Laudo.

El 18 de septiembre de 2008, el Ing. Jorge Pierluisi Díaz emitió un laudo, denominado como parcial final, en el que resolvió la disputa sobre el *Termination for Default,* y otras incidentales a ésta. De esa manera, dejó pendiente para resolución el resto de las controversias habidas entre las partes.[2]

Posteriormente, el 5 de diciembre de 2008 se celebró una vista de arbitraje a la que asistieron las partes. En la misma, VDE levantó el planteamiento de falta de jurisdicción del árbitro para continuar atendiendo las disputas entre las partes, y de manera enfática, estableció que cualquier actuación o laudo emitido con posterioridad a la fecha estipulada para éste actuar carecía de efecto legal alguno. A pesar de ello, el árbitro insistió en continuar la vista.

---

[2] Entre esas controversias se encontraban: Alegación de VDE de que F&R no siguió el ritmo del trabajo establecido para los hormigones y sobre facturación del movimiento de tierra; controversia sobre la charca de retención; controversia sobre la subordinación de la cesión de $1.4 millones por F&R y descuento en las certificaciones por dicha cantidad; reclamaciones de F&R por cantidades no adeudadas, etc. Véase, Apéndice del *Certiorari*, págs. 393, 412.

Así las cosas, en esa misma fecha, y en vista de que su reclamo jurisdiccional no fue atendido, VDE presentó una Demanda sobre sentencia declaratoria, entredicho provisional, *injunction* preliminar y permanente contra F&R, el Ing. Jorge Pierluisi Díaz, y el Banco Santander de Puerto Rico. Entre otros extremos, peticionó al Tribunal de Primera Instancia que emitiera un *injunction* preliminar al amparo de la Regla 57 de Procedimiento Civil, 32 L.P.R.A. Ap. III, para impedir al árbitro continuar con los procedimientos en el caso de arbitraje. Alegó que bajo el palio de la Ley Núm. 376 de 8 de mayo de 1951, según enmendada, conocida como Ley de Arbitraje de Puerto Rico, 32 L.P.R.A. sec. 3201 *et seq.*, el árbitro no tenía facultad para continuar adjudicando las disputas pendientes dentro del procedimiento de arbitraje, toda vez que con la emisión del Laudo Parcial, había perdido su jurisdicción. Amparó su posición en la Estipulación suscrita por las partes. Señaló que ésta extendía hasta el 22 de septiembre de 2008 el término del cual disponía el árbitro para emitir el laudo final.

En cuanto a la petición de sentencia declaratoria, peticionó que el tribunal declarara que el árbitro perdió jurisdicción para continuar con el arbitraje y para emitir un laudo respecto a todas las disputas sometidas por las partes que estuvieron ante su consideración; que declare el laudo parcial emitido nulo al no haberse resuelto de forma

final antes del 22 de septiembre de 2008 todas las disputas sometidas, por no ser conforme a derecho y por estar viciado por arbitrariedad, capricho y perjuicio. Además adujo que el árbitro había incurrido en error y perjudicado sus derechos y que se había extendido en sus funciones. Véase, Apéndice del *Certiorari*, Demanda, págs. 65-68.

F&R se opuso a la Demanda incoada y solicitó su desestimación. Alegó que faltaban disputas por resolver, por lo que debía continuarse con el procedimiento de arbitraje. Como fundamento, adujo que la Estipulación suscrita sólo contemplaba la resolución parcial de las disputas relacionadas a la validez de la declaración de incumplimiento y terminación del Contrato de Construcción por parte de VDE. Alegó que no procedía el *injunction*, ya que el daño que pudiera causársele a VDE era resarcible pecuniariamente; no se había ejecutado el Laudo; y que el mismo no era revisable judicialmente hasta que fuera final.

VDE presentó oportuna réplica. Fue su contención que, pasada la fecha de la Estipulación, el árbitro no contaba con jurisdicción. Planteó que sólo existía una Estipulación válida para extender el término del árbitro para emitir el laudo, y que la peticionaria no había establecido que existiera otra Estipulación que enmendara la suscrita el 7 de agosto de 2008.

El 29 de enero de 2009, el Tribunal de Primera Instancia emitió la Orden de *injunction* preliminar,

ordenándole al árbitro Ing. Pierluisi Díaz cesar y desistir de proseguir con el proceso de arbitraje en disputa hasta que se resolviera el interdicto permanente o se emitiera orden al contrario. A su vez, ordenó a la recurrida prestar fianza por la cantidad de veinticinco mil dólares ($25,000). En consecuencia, y conforme reseñado, denegó la solicitud de desestimación de la Demanda instada.

La peticionaria solicitó la reconsideración de este dictamen. Acogida y evaluada por el foro de instancia a la luz de los argumentos de las partes, la petición fue denegada. El Tribunal de Primera Instancia, por lo tanto, señaló la Conferencia con Antelación a Vista de Interdicto Permanente.

Insatisfecha, la peticionaria acudió ante el Tribunal de Apelaciones. El foro apelativo intermedio denegó la expedición del auto solicitado. Entendió que:

> Una lectura de la Estipulación suscrita por las partes de epígrafe, nos lleva a coincidir con el TPI en cuanto a que la letra de ésta demuestra la clara intención de las partes en prorrogar la emisión del laudo por el árbitro sólo hasta el 22 de septiembre de 2008. La Estipulación a la cual llegaron las partes durante el procedimiento de arbitraje fue redactada de forma sucinta y con un lenguaje simple y claro. En lo pertinente, establece que las partes acuerdan que la vista del caso finalizó el 7 de agosto de 2008 y que se prorroga el término del cual dispone el árbitro para rendir el laudo, hasta el 22 de septiembre de 2008. Nada más expresa sobre el laudo en controversia.
>
> Como vemos, en la referida estipulación no se hizo referencia a las controversias específicas a ser resueltas mediante el laudo. Tampoco se

trasluce de la Estipulación que el laudo a emitirse sea uno parcial. Mucho menos revela una intención de las partes de que luego de la fecha límite allí pactada, se reanuden las vistas de arbitraje para la solución de las disputas restantes. La letra clara de la Estipulación firmada por las partes de epígrafe no está sujeta a interpretación alguna. No vemos razones para apartarnos de su sentido literal, máxime cuando la parte apelante no ha demostrado la existencia de una estipulación en contrario. Concluimos que el presente caso no presenta una controversia de intención de las partes al contratar.

Como consecuencia de esta Estipulación, a partir del 22 de septiembre de 2008, el árbitro estaba privado de entrar a dilucidar las controversias pendientes entre las partes. Al ser esta determinación producto de un acuerdo entre las partes, éste estaba limitado por lo allí pactado. La autoridad del árbitro se deriva esencialmente del acuerdo entre las partes por ser una figura de naturaleza contractual. *Municipio Mayagüez v. Lebrón*, *supra*. Los árbitros tienen que conformarse a los términos y limitaciones de lo convenido.

Por lo tanto, carecen de autoridad para ir más allá de sus términos, ya que una vez aceptan su designación como árbitros deben descargar sus funciones dentro de los límites impuestos. G. Ormazabal Sánchez, *La Ejecución de Laudos Arbitrales*, J.M. Bosch Editor, S.A. (1996), pág. 163.

En el presente caso, el árbitro carecía de autoridad para continuar con el procedimiento de arbitraje en exceso del término prorrogado y pactado entre las partes para ello en la Estipulación... .

Inconforme, la peticionaria acude ante nos y alega los errores siguientes:

1.  **Erraron los tribunales inferiores (TPI y TA) al no desestimar la causa de acción sobre el Interdicto Permanente y Nulidad de Laudo por falta de jurisdicción, toda vez que el Laudo Parcial Final emitido por el Árbitro y**

> objeto de la solicitud de revocación no constituye un "laudo final" sujeto a revocación a tenor con lo dispuesto en el Artículo 22 de la Ley de Arbitraje.

2. Erraron los tribunales inferiores (TPI y TA) al no desestimar la reclamación de VDE al amparo de la Ley de Derechos Civiles de P.R., toda vez que el procedimiento de arbitraje objeto de la reclamación de VDE se condujo entre partes privadas por lo que no existe el requisito de Acción Gubernamental o *State Action* necesario para que se configure una causa de acción al amparo de la Ley de Derechos Civiles de P.R.

3. Erraron los tribunales inferiores (TPI y TA) al no desestimar las causas de acción sobre incumplimiento [de] contrato presentada por VDE contra el Árbitro y F&R por el alegado incumplimiento de éstos con el Convenio de Arbitraje, por falta de jurisdicción sobre la materia, ya que toda disputa entre VDE y F&R relacionada con el Contrato de Construcción debe resolverse mediante arbitraje y por no ser el Árbitro una parte del Convenio de Arbitraje al que se le pueda reclamar su cumplimiento.

4. Erraron los tribunales inferiores (TPI y TA) al sostener la expedición de una orden de *injunction* preliminar sin que VDE cumpliera con los requisitos establecidos para la expedición de la misma. (Énfasis en el original). Petición de *Certiorari*, pág. 9.

Vista la petición de *certiorari*, acordamos expedir. Mediante Resolución al efecto le ordenamos a la recurrida que mostrara causa por la cual no debíamos expedir el auto solicitado. Con el beneficio de la comparecencia de las partes, procedemos a resolver el presente caso.

## II

En su escrito, la peticionaria sostiene que no procedía emitir un interdicto preliminar y que lo

procedente es desestimar la causa de acción de la recurrida. Es su contención que no existe jurisdicción para atender el pleito ya que aún no existe un laudo final revisable. Indica que la recurrida no tenía una causa de acción válida a su favor y que todas las disputas relacionadas al Contrato de Construcción debían tramitarse mediante arbitraje, tal y como se había acordado en el Contrato original. En ese tenor, la parte peticionaria argumenta que en la Estipulación del 7 de agosto de 2008 no se acordó culminar el proceso de arbitraje *per se*, sino de ponerle fin a una controversia específica. Es decir, que la Estipulación se refería a un trámite parcial, por lo que el árbitro tiene la jurisdicción para continuar el proceso de arbitraje y con ello dirimir el resto de las controversias. Además, sostiene que solamente cuando es emitido un laudo final, éste es revisable en los tribunales conforme a la Ley Núm. 376, *supra*. Arguye que el Art. 22 de la Ley Núm. 376, *supra*, 32 L.P.R.A. sec. 3222, concede un remedio en ley para cuando una parte quiere impugnar un laudo, por lo que no procedía conceder el interdicto preliminar, ya que existía un remedio que le aplicaba en ley.

A *contrario sensu*, la parte recurrida expone que la Estipulación suscrita entre las partes prorrogaba el término del árbitro para emitir un laudo sobre todas las controversias. Sostiene que dado a que el árbitro emitió un laudo parcial y no uno final, éste perdió jurisdicción y

poder para decidir las controversias. Por lo tanto, aduce que el Tribunal de Primera Instancia emitió el *injunction* preliminar correctamente toda vez que le impidió al árbitro continuar con un procedimiento arbitral donde ya había perdido la jurisdicción.

A *priori*, podemos resumir los errores planteados por las partes en las siguientes controversias: 1) dilucidar si la Estipulación arbitral pactada entre las partes, prorrogando el término del árbitro para emitir un laudo, se refería a un laudo que adjudicara, primeramente, una controversia específica o a uno que resolviera todas las disputas entre las partes; y 2) determinar si el Tribunal de Primera Instancia erró al ordenar el *injunction* preliminar solicitado por la recurrida, en el que le ordenó al árbitro que cesara y desistiera de continuar con el procedimiento de arbitraje.[3] Por último, lo anterior presenta de manera ineludible la interrogante de si un laudo parcial emitido por el árbitro, puede ser revisado por el Tribunal de Primera Instancia de acuerdo al principio de finalidad de los laudos de arbitraje previsto en la Ley Núm. 376, *supra*.

---

[3] Como ya mencionamos, el Tribunal de Primera Instancia determinó que el árbitro carecía de jurisdicción para continuar con el procedimiento de arbitraje en exceso del término prorrogado y pactado entre las partes en la estipulación.

### III

### A

El arbitraje en Puerto Rico, como método alterno de solución de disputas, juega un papel preeminente. Nuestro ordenamiento jurídico hace asequible que las partes en un contrato se obliguen a llevar ante un árbitro, mediante un procedimiento de arbitraje, las posibles controversias futuras relacionadas con su contrato. Esa facultad surge principalmente de la Ley Núm. 376, *supra*. Así, el Art. 1 de la mencionada ley establece que las partes "podrán incluir en un convenio por escrito una disposición para el arreglo mediante arbitraje de cualquier controversia que en el futuro surgiere entre ellos de dicho acuerdo o en relación con el mismo. Art. 1, Ley Núm. 376, *supra*; *Municipio Mayagüez v. Lebrón*, 167 D.P.R. 713, 720 (2006); *Crufon Const. v. Aut. Edif. Púbs.*, 156 D.P.R. 197, 204 (2002). "Tal convenio será válido, exigible e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio". Art. 1, Ley Núm. 376, *supra*.

Es indubitado el carácter contractual que comporta la figura del arbitraje. Por lo tanto, se puede exigir únicamente cuando se ha pactado y además cuando conste por escrito. Art. 1 de la Ley Núm. 376, *supra*; *Crufon Const. v. Aut. Edif. Púbs.*, *supra*, pág. 204; *Municipio Mayagüez v. Lebrón*, *supra*; *U.C.P.R. v. Triangle Engineering Corp.*, 136

D.P.R. 133, 144 (1994). Así, una cláusula de arbitraje subsumida en un Contrato de Construcción (como ocurre en el caso de autos), así como cualquier acuerdo entre las partes relacionado a dicha cláusula, no son ajenas a los principios generales que imperan en nuestra jurisdicción en materia de obligaciones y contratos.

Entre estos principios se encuentra la libertad de la autonomía de la voluntad de los contratantes, el cual le otorga gran libertad de acción a los particulares que desean obligarse. *Banco Popular de Puerto Rico v. Sucn. Talavera*, res. el 31 de julio de 2008, 175 D.P.R.___ (2008), 2008 T.S.P.R. 132, 2008 J.T.S.___. Esta norma bien asentada, consagra la libertad que gozan los particulares en el ámbito de las obligaciones para regular sus propios intereses y fijar el contenido de los contratos. D. Espín Cánovas, *Manual de Derecho Civil Español*, 6ta ed., Ed. Rev. de Derecho Privado, Madrid, 1983, Vol. III, pág. 365. Véase, además, Puig Brutau, *Fundamentos de Derecho Civil*, T. II., Vol. I, 3ra ed., Bosch, Barcelona, 1988, págs. 5-9. Dicha norma se encuentra recogida en el Art. 1207 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 3372, el cual dispone que "los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público".

A su vez, el Art. 1044 del Código Civil, 31 L.P.R.A. sec. 2992, postula el principio de *pacta sunt servanda*, el cual propugna que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes y deben cumplirse a tenor con los mismos. Véase, *Painwebber, Inc. v. Soc. de Gananciales*, 151 D.P.R. 307, 311 (2000). En consideración a dicho postulado, se dice que "cuando las personas contratan crean normas obligatorias; tan obligatorias como la ley misma", por lo que "los contratos... tienen fuerza de obligar; tienen que ser cumplidos...". J.R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Ed. Universidad Interamericana de Puerto Rico, 2006, T. IV, Vol. II, págs. 99-100.

Por otro lado, no debemos olvidar que las preteridas normas convergen con el principio de la buena fe contractual, el cual esta latente en todo nuestro ordenamiento. "Sus dictámenes vinculan a las partes durante las relaciones precontractuales, afectan la interpretación de los contratos, regulan su cumplimiento y permiten su modificación". *Oriental Financial v. Nieves*, 172 D.P.R. 462, 471 (2007). Se trata de una fuente que produce deberes especiales de conducta exigible en cada caso, según la naturaleza de la relación jurídica y la finalidad perseguida por las partes a través de ella. *Íd.*, págs. 471-472; *Arthur Young & Co. v. Vega III*, 136 D.P.R. 157, 170-171 (1994).

Como expresamos en *Colón v. Glamourous Nails*, 167 D.P.R. 33, 45 (2006), citando a Díez-Picazo:

> [L]a buena fe... es la lealtad en el tratar, el proceder honrado y leal. Supone el **guardar la fidelidad a la palabra dada y no defraudar la confianza, ni abusar de ella;** supone un conducirse como cabe esperar de cuantos, con pensamiento honrado, intervienen en el tráfico como contratantes. (Énfasis suplido y citas omitidas). Véase, además, J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1988, T. II, Vol. I, pág. 16.

En cuanto a la interpretación contractual, el Art. 1233 del Código Civil, 31 L.P.R.A. sec. 3471, postula, como norma elemental de exégesis, la limitación a la letra del estatuto cuando esta sea diáfana: "[s]i los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas". Art. 1233 del Código Civil, *supra*. Ahora bien, el propio Art. 1233 del Código Civil, *supra*, señala que si las palabras parecieren contrarias a la intención evidente de las partes, esta prevalecerá sobre las palabras.

La intención de las partes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. Véanse: *Marcial Burgos v. Tome*, 144 D.P.R. 522, 537 (1997); *Unisys v. Ramallo Brothers*, 128 D.P.R. 842, 852-853 (1991); *Marina Ind. Inc. v. Brown Corp.*, 114 D.P.R. 64, 69-70 (1983). Por eso, hemos dicho que "[e]l norte de la interpretación contractual es determinar cuál fue la real y común intención de las partes", *Municipio Mayagüez v.*

*Lebrón*, *supra*, pág. 723, por lo que "interpretar si un contrato es claro presupone concordar su letra con la intención de las partes". *Íd.*; *Marcial Burgos v. Tome*, *supra*.

Para auscultar la intención de los contratantes hemos aplicado una metodología pragmática: estudiar los actos anteriores, coetáneos y posteriores al momento de perfeccionarse el contrato, incluyendo otras circunstancias que puedan denotar o indicar la verdadera voluntad de los contratantes como el acuerdo que se intentó llevar a cabo. Art. 1234 del Código Civil, 31 L.P.R.A. sec. 3472; *Municipio Mayagüez v. Lebrón*, *supra*, pág. 724; *Ramírez Segal & Latimer v. Rojo Rigual*, 123 D.P.R. 161, 174 (1989); *Merle v. West Bend Co.*, 97 D.P.R. 403, 410 (1969). Asimismo, al momento de interpretar un contrato es necesario presuponer lealtad, corrección y buena fe en su redacción para evitar llegar a resultados absurdos o injustos. *S.L.G. Irizarry v. S.L.G. García*, 155 D.P.R. 713, 726 (2001). Véanse: *Municipio Mayagüez v. Lebrón*, *supra*, pág. 724; *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 75 (1987).

A lo anterior debemos añadir que la fuerte política pública que existe en Puerto Rico a favor del arbitraje, exige que toda duda que pueda existir sobre si procede o no el arbitraje debe resolverse a favor de éste. *Méndez Acevedo y otros v. Nieves Rivera, et als*, res. el 22 de

junio de 2010, 179 D.P.R. ___, 2010 T.S.P.R. 105, 2010 J.T.S. 114; *U.C.P.R. v. Triangle Engineering Corp.*, *supra*, págs. 141-142, 143; *Quiñones v. Asociación*, 161 D.P.R. 668, 673 (2004); *PaineWebber v. Soc. de Gananciales*, 151 D.P.R. 307, 312-313 (2000); *McGregor-Doniger, Inc. v. Tribunal Superior*, 98 D.P.R. 864, 869 (1970). De hecho, este Foro ha afirmado que "ante un convenio de arbitraje lo prudencial es la abstención judicial, aunque esa intervención no esté vedada". *Méndez Acevedo y otros v. Nieves Rivera*, *supra*; *Municipio Mayagüez v. Lebrón*, *supra*, pág. 721; *U.C.P.R. v. Triangle Engineering Corp.*, *supra*, pág. 142. Por eso, una vez acordado el arbitraje, los tribunales carecen de discreción respecto a su eficacia y tienen que dar cumplimiento al arbitraje acordado. *Municipio Mayagüez v. Lebrón*, *supra*, pág. 721. Véase, *Moses H. Cone Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Claro está, no se puede obligar a una parte a someter una disputa al procedimiento de arbitraje si esa parte no lo ha pactado de esa forma. *Municipio de Ponce v. Gobernador*, 136 D.P.R. 776, 783 n. 1 (1994).

**B**

La Estipulación suscrita por las partes en controversia reza como sigue:

1. La vista en el caso de epígrafe terminó en el día de hoy, **7 de agosto de 2008.**

2. Las partes acuerdan prorrogar el término del cual dispone el Árbitro (Ing. Jorge A.

Pierluisi Díaz) para rendir el laudo hasta el día **22 de septiembre de 2008**. (Énfasis suplido en original y énfasis suplido).

De una lectura *ad verbatim* de la consabida Estipulación, se desprende que esta concertaba una fecha final para emitir el Laudo por parte del árbitro. Empero, la referida Estipulación no especifica si se refiere a un laudo parcial o a uno final. Sin embargo, luego de haber realizado un minucioso examen del expediente, somos de la opinión que la intención de las partes al redactar dicha Estipulación fue, la de prorrogar el término del árbitro para emitir un laudo parcial sobre la controversia relacionada a la terminación del Contrato de Construcción.

En primer lugar, de la Minuta de una reunión especial llevada a cabo por las partes y el árbitro el día 13 de marzo de 2008 surge lo siguiente:

Nuevamente, la controversia sobre el "Termination for Default" fue objeto de consideración por este árbitro y consignado en su Resolución y Orden del 26 de febrero de 2008, sin ninguna intervención activa o pasiva de ninguna parte en este caso.

........

El Árbitro tomará conocimiento de lo que sea sometido en este proceso y en lo que se declara en las Vistas Programadas que tenga relación con el "Default" para emitir un Laudo Parcial Final sobre esta controversia. Véase, Apéndice del *Certiorari*, págs. 324-327.

Posteriormente, el 20 de marzo de 2008, mediante documento titulado "Resolución y Orden", el árbitro señaló que la controversia sobre el *Termination for Default* o

declaración de terminación de contrato, era la controversia principal que tenían las partes. Expresó que le había concedido a las partes llevar a cabo un descubrimiento de prueba limitado al asunto del *Termination for Default*. Véase, Apéndice del *Certiorari*, pág. 335.

A su vez, en la Minuta de las Vistas Núm. 28, 29 y 30 celebradas entre los días 5, 6 y 7 de agosto de 2008 el árbitro señaló:

> **En un documento aprobado por ambas Partes se concederá al Árbitro que en o antes del 22 de septiembre de 2008, [é]ste somet[a] su Laudo Parcial y Final** en cuanto a la pertinencia de la Declaración de Terminación del Contrato de Construcción (Default) y su resolución en cuanto a las controversias sometidas al Árbitro [sic] tomando como base las presentaciones hechas por las partes en las 30 vistas celebradas. (Énfasis suplido). Véase, Apéndice del *Certiorari*, pág. 383.

Finalmente, del propio Laudo parcial suscrito por el árbitro surge, no solamente la intención de éste de continuar con el procedimiento de arbitraje en torno a las otras controversias no adjudicadas, sino también una síntesis de los acuerdos entre las partes para que se resolviera primero la controversia sobre la declaración de terminación del contrato. Por su especial importancia en la solución de este caso, citamos las porciones pertinentes de dicho Laudo que constatan lo antes dicho:

> Se discutió extensamente en varias reuniones especiales durante los meses de febrero y marzo 2008 si procedía que el Árbitro [sic] considerara resolver primeramente la controversia que surgió por haber declarado VDE el Default. El Árbitro

decidió en la Orden del 23 de abril de 2008, que en el descargo de su responsabilidad delegada y de acuerdo con lo aprobado por las Partes en el Contrato para el proceso de arbitraje se procederá a celebrar las Vistas para resolver el "Default". Se seleccionaron las fechas para la celebración de las Vistas.

Se llevaron a cabo 24 vistas durante los meses de mayo, junio, julio y agosto de 2008. La última Vista se celebró el 7 de agosto de 2008 y se dio por terminada las mismas [sic]. Por acuerdo de las Partes se concedió al Árbitro [sic] por escrito hasta el 22 de septiembre de 2008 para rendir el Laudo Parcial Final sobre la Declaración de Terminación del Contrato (Default) por VDE a F&R. Se incluirá en el Laudo la resolución de aquellas controversias sobre las cuales se ha sometido la evidencia suficiente para poder resolver cada una. Las Partes someterían en forma simultánea una Propuesta Determinación de Hechos el 27 de agosto de 2008, lo cual [se] hizo. Véase, Apéndice del *Certiorari*, pág. 371.

De los documentos reseñados es ostensible que la verdadera intención de las partes al pactar la Estipulación prorrogando el término del árbitro para someter el Laudo, se refería a la controversia sobre la declaración de terminación del contrato. Como ya mencionamos, la intención de las partes es el criterio fundamental para fijar el alcance de las obligaciones contractuales. De ahí que cuando las palabras sean contrarias a la clara intención de las partes, ésta debe prevalecer sobre aquellas.

En el caso de autos, aunque en la Estipulación no se hace ninguna referencia en torno al alcance del Laudo, los actos anteriores y posteriores a la Estipulación traslucen, inequívocamente, la intención de las partes de que la

prórroga al árbitro se circunscribiera a la adjudicación de la controversia sobre la declaración de terminación del contrato y no sobre todas las controversias que tenían las partes. Al concordar la letra de la Estipulación con la intención de las partes, tenemos que concluir que esa es la interpretación más razonable de dicha Estipulación.

Esta conclusión encuentra apoyo en el hecho de que del expediente del caso no surge oposición alguna de la parte recurrida que contradiga los entendidos entre las partes de prorrogar el término del árbitro para que emitiera por adelantado un laudo parcial sobre la controversia relacionada a la declaración de terminación del contrato. Es decir, la recurrida no objetó ninguno de los documentos, minutas u órdenes que suscribió el árbitro, en evidente asentimiento a que éste atendiera dicha controversia primero.

Como ya expresamos, el principio de la buena fe exige que las partes honren sus acuerdos y la palabra dada con el propósito de no defraudar la confianza de la otra parte con quien pactó, de forma que con su comportamiento puedan realizar las expectativas comunes que mutuamente se trazaron. Por lo tanto, nos parece cuestionable que la recurrida haya esperado a que el árbitro emitiera un laudo parcial --que no le favoreció-- para alegar, por primera vez, que la Estipulación acordada con la peticionaria, se refería a una prórroga para que el árbitro emitiera un

laudo final sobre todas las controversias. Tal contención, además de ser contraria a la prueba documental que aflora del expediente del caso, es una acomodaticia que atenta contra la buena fe, la libertad de la voluntad en la contratación y el principio de *pacta sunt servanda*.

Por lo tanto, colegimos que la verdadera intención de las partes al acordar la Estipulación para prorrogar el término del árbitro, era que la controversia sobre la declaración de terminación del contrato se resolviera antes que el resto de las controversias entre las partes.

**IV**

**A**

En general, el recurso extraordinario del *injunction* está encaminado a prohibir o a ordenar la ejecución de determinado acto, con el fin de evitar causar perjuicios inminentes o daños irreparables a alguna persona, en casos en que no hay otro remedio adecuado en ley. *E.L.A. v. Asoc. de Auditores*, 147 D.P.R. 669, 679 (1999). Sin embargo, el *injunction* es un remedio dirigido principalmente contra actos futuros que amenazan ser cometidos o que se anticipa que serán cometidos. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 4ta ed., Puerto Rico, Lexis Nexis, sec. 57.03, pág. 463.

Para determinar si procede el recurso extraordinario de *injunction* hay que detectar si la acción connota o no un agravio de patente intensidad al derecho del individuo

que reclame urgente reparación. *Gracia Ortiz v. Policía de Puerto Rico*, 140 D.P.R. 247 (1996). Constituye, por tanto, un daño irreparable aquél que no puede ser adecuadamente satisfecho mediante la utilización de los remedios legales disponibles. *Pérez Vda. Muñiz v. Criado*, 151 D.P.R. 355, 373 (2000). De ahí, que la parte promovente deberá demostrar que de no concederse el mismo, sufriría un daño irreparable. *Misión Industrial v. Junta Planificación*, 142 D.P.R. 656, 681 (1997).

En cuanto al *injunction* preliminar o *pendente lite*, hemos dictaminado que la concesión de este remedio se debe evaluar a la luz de los siguientes factores o criterios: 1) la naturaleza de los daños que pueden ocasionárseles a las partes de concederse o denegarse el injunction; 2) su irreparabilidad o la existencia de un remedio adecuado en ley; 3) la probabilidad de que la parte promovente prevalezca eventualmente al resolverse el litigio en su fondo; 4) la probabilidad de que la causa se torne en académica de no concederse el remedio; 5) y el posible impacto sobre el interés público. *Rullán v. Fas Alzamora*, 166 D.P.R. 742, 764, (2006); *Mun. de Loíza v. Sucn. Suárez et al*, 154 D.P.R. 333, 367 (2001); *Puerto Rico Telephone Co. v. Tribunal Superior*, 103 D.P.R. 200, 202 (1975). Véase, además, R. Hernández Colón, *op. cit.*, sec. 57.11, pág. 471.

El propósito fundamental del *injunction* preliminar surge de la razón de ser del cuarto criterio esbozado: mantener el *status quo* hasta que se celebre el juicio en sus méritos para que no se produzca una situación que convierta en académica la sentencia que finalmente se dicte al atender la petición de *injunction* permanente, o se le ocasionen daños de mayor consideración al peticionario mientras perdura el litigio. *Rullán v. Fas Alzamora*, *supra*; *Cobos Liccia v. DeJean Packing Co., Inc.*, 124 D.P.R. 896, 902 (1989). Véase, además, D. Rivé Rivera, *Recursos Extraordinarios*, 2da ed., San Juan, Prog. Educ. Jurídica Continua Univ. Interamericana de P.R., Facultad de Derecho, 1996, pág. 21. Asimismo, debemos mencionar que aunque el cuarto criterio es el más importante, éste es concomitante con el segundo criterio: la irreparabilidad de los daños o la existencia de un remedio adecuado en ley. *Rullán v. Fas Alzamora*, *supra.*

Ahora bien, la concesión de una orden de *injunction* preliminar o entredicho provisional descansa en la sana discreción del tribunal, por lo que la decisión que lo ordene no será revocada en apelación a menos que se demuestre que dicho foro abusó de su facultad discrecional. *E.L.A. v. Asoc. de Auditores*, *supra*, pág. 680; *Delgado v. Cruz*, 27 D.P.R. 877, 880 (1919). Véase, además, J. Rivé Rivera, *op cit.*, pág. 23.

**B**

En armonía con lo antes expuesto, entendemos que en el caso de autos no procedía la imposición del *injunction* preliminar para impedir que el árbitro continuara el procedimiento de arbitraje de las demás controversias entre las partes. No cabe duda que la concesión del *injunction* preliminar que hizo el Tribunal de Primera Instancia y que fue avalada por el Tribunal de Apelaciones, descansó esencialmente en su interpretación literal de la Estipulación de prórroga habida entre las partes. Sin embargo, como ya hemos expresado, nuestra interpretación de dicha Estipulación es diametralmente distinta.

En primer lugar, la recurrida no ha probado que la no concesión de dicho remedio le ocasione un daño irreparable o que no exista un remedio adecuado en ley. *A contrario sensu*, en su Oposición al Auto de *Certiorari*, ésta reconoce que la Ley Núm. 376, *supra,* le otorga autoridad al Tribunal de Primera Instancia para conceder un remedio. Véase, Oposición a Auto de *Certiorari*, pág. 13. En efecto, el Art. 22 de la Ley Núm. 376, *supra*, le otorga un término de tres (3) meses[4] a las partes para que soliciten la revocación de un laudo por los motivos expresamente expuestos en la ley. Por su parte, el Art. 23 de la citada Ley Núm. 376, 32 L.P.R.A. sec. 3223, le concede igual término a las partes

---

[4] Véase, Art. 24 de la citada Ley Núm. 376, 32 L.P.R.A. sec. 3224.

para solicitar la modificación o corrección de un laudo por las razones allí estatuidas.[5]

Por lo tanto, no cabe duda que la Ley Núm. 376, *supra*, le provee un remedio a la parte que no esté de acuerdo con el laudo que emita el árbitro. De ahí, que el daño que pueda sufrir una parte con el laudo de arbitraje sea reparable. Tampoco creemos que la naturaleza del daño en este caso amerite la concesión del *injunction* preliminar. A lo sumo, se trata de un daño de naturaleza monetaria que como ya hemos dicho puede recuperarse a través del remedio disponible por la Ley Núm. 376, *supra*.

Así también, la probabilidad de que la parte promovente prevalezca al resolverse el litigio en su fondo es, como poco, altamente especulativa. Las razones que esboza la recurrida en su Demanda para solicitar la revocación del Laudo parcial bajo el Art. 22 de la Ley Núm. 376, *supra*, son que: el árbitro se excedió en sus funciones; que el Laudo emitido por éste no fue uno final y definitivo; que el árbitro cometió errores que perjudicaron sus derechos. Véase, Apéndice de *Certiorari*, pág. 66. Acota

---

[5] El Art. 23 de la Ley Núm. 376, *supra*, establece tres (3) motivos para modificar o corregir un laudo, a saber:

    a) Cuando hubo evidente error de cálculo en cuanto a las cifras, o evidente error en la descripción de cualquier persona, cosa o propiedad.

    b) Cuando los árbitros hayan resuelto sobre materia no sometida a ellos.

    c) Cuando el laudo sea imperfecto en materia de forma, sin afectar los méritos de la controversia.

    d)

que el árbitro perdió jurisdicción para continuar con el procedimiento de arbitraje, por lo que no puede emitir un laudo sobre las disputas no resueltas. *Íd*. Por esto, solicita que se declare nulo el Laudo parcial y que se le prive al árbitro de continuar con el proceso.

Todas esas contenciones parten de la premisa de que el árbitro violó la Estipulación pactada entre las partes, porque no emitió un laudo final y definitivo que adjudicara todas las controversias en la fecha allí consignada. No obstante, como ya hemos discutido, la intención de las partes al pactar dicha Estipulación era prorrogar el término del árbitro en torno a la controversia sobre la declaración de terminación del Contrato solamente y no con relación a la totalidad de las controversias. Por ende, es bastante improbable preconizar que el Laudo parcial debe revocarse bajo el Art. 22 de la Ley Núm. 376, *supra*, cuando el cimiento de esa postura es la Estipulación.

En cuanto a la probabilidad de que la causa se torne académica al no concederse el *injunction* preliminar, entendemos que en este caso dicha probabilidad esta enervada. Como ya dijimos, este criterio busca mantener el *status quo* hasta que se celebre el juicio en sus méritos para que no se produzca una situación que convierta en académica la sentencia que finalmente se dicte al atender la petición de *injunction* permanente, o se le ocasionen daños de mayor consideración al peticionario mientras

perdura el litigio. En el presente caso, no hace falta mantener el *status quo* porque luego de finalizado el proceso de arbitraje, la recurrida tendrá a su disposición los remedios provistos por la Ley Núm. 376, *supra*.

Finalmente, no vemos como se puede impactar el interés público con la no concesión del *injunction* preliminar. Al contrario, se resguardaría y honraría la fuerte política pública que hay en Puerto Rico a favor del arbitraje. A su vez, se respetaría lo pactado por las partes y con ello se honraría la libertad de contratación y el principio de *pacta sunt servanda*. En otras palabras, permitiendo la continuación del procedimiento de arbitraje se harían valer los principios rectores de nuestro ordenamiento en materia contractual.

Por todo lo antes esbozado, sostenemos que el Tribunal de Primera Instancia abuso de su discreción al conceder el *injunction* preliminar a favor de la recurrida para evitar que el árbitro continuara el procedimiento de arbitraje pactado entre las partes. En aras de la justicia y por existir prueba que refuta claramente la teoría del foro primario, debemos revocar el dictamen y requerir que se continúe el proceso de arbitraje con relación a las controversias no resueltas. Esta conclusión está en sintonía con la normativa expuesta, incluyendo la fuerte política pública que favorece al arbitraje en nuestra jurisdicción como método alterno de solución de disputas.

**V**

**A**

Por otro lado, la parte peticionaria plantea como error y argumenta en su alegato que el Tribunal de Primera Instancia no tiene jurisdicción para atender la acción interpuesta por la recurrida debido a que aún no existe un laudo final revisable. Arguye, que todavía hay otras controversias que no se han adjudicado por lo que el Laudo emitido carece de finalidad. Esto plantea la interrogante de si un laudo parcial puede ser revisado por el Tribunal de Primera Instancia, o si debe concluir todo el proceso arbitral antes de que la parte interesada pueda acudir al tribunal de instancia a solicitar su revisión (revocación, modificación, corrección o confirmación).

El Tribunal Supremo de Estados Unidos no se ha expresado sobre el particular. Empero, los tribunales federales inferiores sí han tenido que lidiar con la controversia que nos toca resolver y no podemos obviar que las interpretaciones que han realizado estos foros en el campo del arbitraje comercial, nos han sido de gran ayuda a la hora de resolver controversias sobre esta materia en Puerto Rico. Véase, *World Films, Inc. v. Paramount Pictures Corp.*, 125 D.P.R. 352 (1990). Máximo, cuando dichos foros basan sus dictámenes en interpretaciones de la Ley Federal de Arbitraje, 9 U.S.C.A. sec. 1, *et seq*, que es la matriz de nuestra Ley Núm. 376, *supra*.

Para comenzar nuestro análisis, creemos pertinente definir lo que es un "laudo" de arbitraje. En cuanto a su naturaleza, un laudo de arbitraje no es ni un contrato ni una sentencia, sino que disfruta de las cualidades de ambos. *Junta Relaciones del Trabajo v. N.Y. & P.R. S/S. Co.*, 69 D.P.R 782, 800 (1949). No obstante, en *Municipio de Mayagüez v. Rivera*, 113 D.P.R. 467, 471 (1982), señalamos que "[u]n laudo de arbitraje ocupa una posición muy similar a la de una sentencia o decreto judicial".

Ahora bien, en sentido estricto, un laudo de arbitraje no es otra cosa que la decisión final de un árbitro al disponer de una controversia;  es la "[d]ecisión o fallo que dictan los árbitros...". Véanse: M. Domke, *Domke on Commercial Arbitration*, 3ra ed., Ed. Thomson Reuters/West, 2009, Vol. I, Sec. 33:1, pág. 1; I; Rivera García, *Diccionario de Términos Jurídicos*, 3ra ed., San Juan, LexisNexis, 2000, pág. 144.

Inherente a estas connotaciones se encuentra latente el principio de finalidad de los laudos de arbitraje, que propugna que la controversia o las controversias que sean sometidas ante un árbitro deben ser resueltas de manera final y definitiva. Véase, M. Domke, *op. cit.*, Vol. I, Sec. 33:1, pág. 2. Esta norma de finalidad está plasmada implícitamente en la Sec. 10(a)(4) de la Ley de Arbitraje Federal, *supra*[6] y en el Art. 22 de la Ley Núm. 376, *supra*,[7]

---

[6] Esta disposición lee de la siguiente manera:

la cual establece como fundamentos para revocar un laudo, entre otras:

> ...

> (d) Cuando los árbitros se extendieren en sus funciones o **cuando el laudo emitido no resolviera en forma final y definitiva la controversia sometida.** (Énfasis suplido).

Surge pues, del inciso (d) antes transcrito, que la no revocación de un laudo está condicionada a que éste sea uno final y definitivo con respecto a la controversia o las controversias que sean sometidas ante un árbitro para ser adjudicadas.

Los foros federales han entendido que para que un laudo sea definitivo, deberá ser lo suficientemente claro y específico como para poder ser puesto en vigor por el tribunal en caso de ser confirmado.[8] Véanse: *IDS Life Ins. Co. v. Royal Alliance Assocs.*, 266 F.3d 645, 650 (7mo Cir.

---

> In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration

> ...

> 4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. Ley Federal de Arbitraje, 9 U.S.C.A. sec. 10(a)(4).

[7] Esta norma fue anunciada en nuestra jurisdicción con anterioridad a la Ley Núm. 376, *supra*. Se trata de un principio general en materia de arbitraje, que si bien fue expuesto en casos de arbitraje laboral, no es ajeno, como puede apreciarse, al arbitraje comercial. Véanse, *Junta Relaciones del Trabajo v. N.Y.&P.R. S/S. Co.*, *supra*, pág. 800; *Junta Relaciones del Trabajo v. Eastern Sugar*, 69 D.P.R. 818, 821 (1949).

[8] Véase el Art. 21 de la citada Ley Núm. 376, 32 L.P.R.A. sec. 3221, que permite la confirmación de un Laudo.

2001); *Diapulse Corp. of America v. Carba, Ltd.*, 626 F.2d 1108, 1111 (2do Cir. 1980). Por eso, un laudo no debe arrojar, de su faz, duda razonable en cuanto a qué fue lo que resolvió el árbitro, ni en cuanto al carácter final y concluyente de las controversias adjudicadas. M. Domke, *op. cit.*, Vol. I, Sec. 33:1, pág. 3.

Asimismo, y como regla general, un laudo final de arbitraje deberá ser completo. Véase, *Local 36, Sheet Metal Workers Intl. Assoc. AFL-CIO v. Pevely Sheet Metal Co. Inc.*, 951 F2d. 947, 949-950 (8vo Cir. 1992). Esto es, que debe disponer de todos los asuntos que hayan sido sometidos ante la consideración del árbitro, de manera que los derechos y obligaciones de las partes, con relación a esos asuntos, no requieran ulterior adjudicación. M. Domke., *op. cit.*, Vol. I, Sec. 33:1, pág. 4. Véanse además: *National Wrecking Co. v. Sarang Corp.*, 581 N.E.2d 787 (1er Dist. 2006); *Mandl v. Bailey*, 858 A.2d 508 (2004).

Sin embargo, por vía de excepción, se ha resuelto que un laudo parcial que disponga de manera final y definitiva un asunto separado e independiente, no tiene que disponer de todas las reclamaciones coetáneamente. Véanse: *Bull HN Information Systems Inc. v. Hutson*, 983 F. Supp. 284, 289 (D. Mass. 1997); *Eurolines Shipping Co., S.A. v. Metal Transport Corp.*, 491 F. Supp. 590, 592 (S.D.N.Y. 1980). En otras palabras, el principio de finalidad no impide que un árbitro disponga final y definitivamente de las

controversias que tenga ante su consideración por medio de una pluralidad de laudos. M. Domke, *op. cit.*, *Íd.*, Vol. I, Sec. 33:1, pág. 2.[9] Así, el hecho de que un árbitro decida emitir distintos laudos para resolver las controversias que tenga ante sí, no soslaya la finalidad del laudo si éste adjudica una o más de las controversias sometidas a arbitraje de forma final y definitiva.[10]

---

[9] Así por ejemplo, la *California Arbitration Act*, Cal. Code Civ. Proc. Sec. 1283.4, prevé el que un árbitro pueda emitir varios laudos para decidir finalmente todas las controversias ante su consideración. De igual manera, la *Revised Uniform Arbitration Act de Alaska*, provee en su Sec. 8(b)1) para que los árbitros puedan emitir laudos parciales de entenderlo necesario. Véase, C.H. Johnson, *Is The Revised Uniform Arbitration Act a Good Fit for Alaska*, 19 Alaska L. Rev. 339, 364 (2002).

La práctica de adjudicar por separado las reclamaciones de las partes en un proceso de arbitraje tampoco es ajena a las Reglas Institucionales de Arbitraje, que permiten en su gran mayoría, la bifurcación de laudos para solucionar las controversias entre las partes. Véase, J.M. Gaitis, *The Federal Arbitration Act: Risks and Incongruities Relating to the Issuance of Interim and Partial Awards in Domestic and International Arbitrations*, 16 Am. Rev. Int´l Arb. 1, 11-15 (2005). Véanse en general, las Reglas de Arbitraje y Procedimientos de Mediación para la Industria de la Construcción de las Asociación Americana de Arbitraje (por sus siglas en inglés, conocida como las *Construction Industry Arbitration Rules and Mediation Procedures*). Por lo tanto, si las partes desean que el árbitro solucione sus conflictos de forma aislada, éstas pueden incorporar las Reglas Institucionales de Arbitraje que así se lo permitan. Claro está, las partes pueden por medio del principio de libertad en la contratación, otorgarle dicha facultad al árbitro sin tener que incorporar dichas reglas al procedimiento de arbitraje. Al fin y al cabo queda a discreción de las partes decidir en cada caso qué hacer.

[10] De hecho, tanto en el ámbito internacional como a nivel doméstico en otros países, se entiende que todos los laudos son finales, en el sentido de que estos resuelven de manera final uno, varios o todos los asuntos que están en disputa entre las partes. A. Redfern y M. Hunter, *Law and Practice of International Commercial Arbitration*, London, Sweet & Maxwell, 1986, pág. 281. La diferencia es que unos laudos se denominan parciales y otros finales. A. Redfern y M. Hunter, *op. cit.*, pág. 270; P.M.B. Rowland, *Arbitration Law and Practice*, Great Britain, Pub. The Institute of Chartered Accountants in England and Wales in association with Sweet & Maxwell Ltd., 1988, págs. 73-74.

Con relación a los laudos finales, se considera que un laudo final es aquel que dispone de todas las controversias que están ante la consideración de un árbitro o aquel que resuelve el resto de las controversias que hayan quedado pendientes ante un árbitro, luego de

En consonancia con lo anterior, distintos foros federales han avalado la revisión de laudos parciales para efectos de confirmación o revocación. Véanse: *Hart Surgical, Inc. v. UltraCision, Inc.*, 244 F.3d 231, 234 (1er Cir. 2001); *Publicis Communication v. True North Communications, Inc.*, 206 F.3d 725, 727-729 (7mo Cir. 2000); *Metallgesellschaft A.G. v. M/V Captain Constante*, 790 F.2d 280, 283 (2do Cir. 1986); *Island Creek Coal Sales Co. v. City of Gainesville*, 729 F.2d 1046, 1049 (6to Cir. 1984); *The Home Insurance Company v. RHA/Pensylvania Nursing Homes*, 127 F. Supp 482, 490 (S.D.N.Y. 2001); *Eurolines Shipping Co., S.A. v. Metal Transport Corp.*, *supra*; *Puerto Rico Maritime Shipping Authority v. Star Lines Ltd.*, 454 F. Supp. 368, 372 (S.D.N.Y. 1978).

En estos precedentes se reconoció que un laudo parcial que adjudica de manera final y definitiva reclamaciones separadas e independientes, puede ser confirmado o revocado aunque no solucione todas las controversias sometidas ante la consideración del árbitro. Al así resolver, dichos foros sostuvieron, al interpretar el requisito de finalidad

que éste emita preliminarmente uno o varios laudos parciales. A. Redfern y M. Hunter, *op. cit.*, pág. 270. En fin, se trata de un laudo que finiquita el procedimiento de arbitraje, poniendo fin a la misión del árbitro de resolver las disputas entre las partes. *Íd.*, pág. 281; P.M.B. Rowland, *op. cit.*, pág. 72.

En cuanto a los laudos parciales, se trata de aquellos laudos que disponen de algunos asuntos que se encuentran en disputa entre las partes. A. Redfern y M. Hunter, *op. cit.* pág. 270. Sin embargo, aunque este tipo de laudo no resuelve todas las controversias que tiene ante su consideración un árbitro, sí resuelve, de manera final, aquellos asuntos que sean planteados por separado. *Íd.*, pág. 287.

estatuido en la Sec. 10(a)(4) de la Ley Federal de Arbitraje, que éste no se quebranta cuando los laudos parciales adjudican de manera final y definitiva alguna de las controversias planteadas.[11]

Para refrendar este proceder, se han esgrimido distintos argumentos. Así por ejemplo, se ha mencionado que dado que el propósito del arbitraje es permitir una solución rápida y económica a las controversias entre las partes, el permitirles la confirmación o revocación de laudos parciales finales y definitivos, agilizaría el proceso de arbitraje. *Metallgesellschaft A.G. v. M/V Captain Constante*, *supra*, pág. 283.[12] Véanse: A. Redfern y M. Hunter, *op. cit.*, pág 284; P.M.B. Rowland, *op. cit.*, pág. 74. Asimismo, se ha reconocido que la emisión de un laudo parcial final y definitivo es razonablemente necesaria para proteger los intereses de las partes, según lo amerite cada caso. J.M. Gaitis, *supra*, pág. 64.

---

[11] Cabe señalar que este proceder no siempre fue avalado por los foros federales. Por ejemplo, en *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 (2do Cir. 1980), el Tribunal Federal para el Segundo Circuito resolvió que bajo la Sec. 10(a)(4) de la Ley Federal de Arbitraje, era improcedente revocar un laudo parcial por no cumplir con el requisito de finalidad. Empero, con el tiempo dicho precedente se fue dejando a un lado por los distintos tribunales federales. Véase, J.M. Gaitis, *supra*, págs. 30-38.

[12] En *Metallgesellschaft A.G. v. M/V Captain Constante*, *supra*, pág. 83, el Tribunal de Apelaciones para el Segundo Circutio Federal expresó: "We have held that 'the purpose of arbitration is to permit a relatively quick and inexpensive resolution of contractual disputes' [citas omitidas]. It would be a perversion of this salutary design for a shipowner to be denied the same prompt and commercially important relief from an arbitration panel that it could have received from a court".

Un ejemplo en el que la confirmación de este laudo sería beneficiosa, es en una situación en la que el deudor reconozca parcialmente su responsabilidad y su deuda, y aún así, se rehúse a pagar, sin ningún fundamento, la suma de dinero adeudada. *Íd.*, pág. 64. Otra situación en la que un laudo parcial puede ser de gran utilidad, es cuando exista alguna controversia jurisdiccional con relación al foro arbitral. En tales casos una decisión parcial sobre ese asunto puede acortar o simplificar el procedimiento de arbitraje considerablemente. A. Redfern y M. Hunter, *op. cit.*, pág 284. Así también, se ha favorecido la utilización y revisión de laudos parciales, en casos donde se adjudica primeramente la responsabilidad de una de las partes, y se deja para posterior resolución la cuestión relacionada a los daños e indemnización. *Hart Surgical, Inc. v. UltraCision, Inc.*, *supra*, págs. 232, 235-236. Véase, P.M.B. Rowland, *op. cit.*, pág. 74.

De la misma manera, la revisión de laudos parciales que adjudiquen de manera final y definitiva una controversia ha sido avalada en casos donde una de las partes alega parcialidad por parte de alguno de los árbitros al emitir el laudo. Véase, *Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132 (2do Cir. 2007). Véase, además, Y. Andreeva, *How Challenging is the Challenge, or can U.S. Courts Remove Arbitrators before an Arbitration has come to an End?* 19

Am. Rev. Int´l Arb. 127, 135-136 (2008). En estos casos, es evidente que esperar a que se concluya todo el proceso de arbitraje puede ocasionarle un perjuicio mayor a la parte que sufre la parcialidad del árbitro.[13]

Finalmente, la Ley Núm. 376, *supra*, no contiene disposición alguna que le impida a un árbitro emitir laudos parciales. Por consiguiente, si las partes pactan la bifurcación de la adjudicación de las controversias, dicho pacto deberá ser válido y exigible por no contravenir la Ley Núm. 376, *supra*, a no ser que sea contrario a la moral o al orden público. Así lo exigen en nuestra jurisdicción, los principios de la libertad de la autonomía de la voluntad de los contratantes y de *pacta sunt servanda.* Por eso, para que un árbitro pueda emitir laudos parciales, del acuerdo arbitral debe surgir que las partes le han concedido tal facultad. Véase, *Hart Surgical, Inc. v. UltraCision, Inc., supra*. Véase, además, K.M. Blankley, *Current Developments in Alternative Dispute Resolution: Did the Arbitrator Sneeze?-—Do Federal Courts Have Jurisdiction*

---

[13] *Cf.* J.M. Rhodes, *Judicial Review of Partial Arbitral Awards under Section 10(a)(4) of the Federal Arbitration Act*, 70 U. Chi. L. Rev. 663. (En síntesis, esta autora no favorece la revisión judicial de laudos parciales porque entiende que ello conllevaría mayor intromisión de los foros judiciales en el proceso de arbitraje, lo que haría menos atractivo para las partes optar por el arbitraje como una alternativa para solucionar sus problemas; y que la intervención judicial puede dilatar el proceso de arbitraje). *Íd.*, pág. 669.

*Over Interlocutory Awards in Class Action Arbitrations?*, 34 VT. L. Rev. 493, 508-509 (2010).[14]

**B**

En el presente caso, según discutimos previamente, surge de los entendidos entre las partes, durante el procedimiento de arbitraje, que éstas acordaron que el árbitro atendiera con preferencia la controversia relacionada a la declaración de terminación del contrato. Ello produjo la adjudicación bifurcada de las disputas entre las partes, y por consiguiente, la emisión de un laudo parcial que no culminó la solución de todas las controversias.

Además, del Convenio de Arbitraje no se desprende que las partes le hayan prohibido al árbitro adjudicar las controversias por separado. Por el contrario, dicho acuerdo contiene un lenguaje laxo en torno a las prerrogativas concedidas al árbitro para dirigir el procedimiento arbitral. Así por ejemplo, dicho acuerdo establece, *inter alia*, que:

> The arbitrator will rule himself by what he in his sole judgment finds just and equitable without regard to applicable law and without regard to legal procedures except that he shall hear the parties and their witnesses, consider the documentary or demonstrative evidence and conduct such inspections as he deem proper. Although the parties may be represented by

---

[14] A falta de disposición estatutaria que regule o conceda expresamente dicha facultad a un árbitro, son las partes en controversia las que pueden facultarlo para que resuelva las disputas de forma separada. Por lo tanto, nada de lo que aquí expresado impide que la Legislatura en un futuro legisle para regular la emisión de laudos parciales.

> counsel, the arbitrator shall direct the manner by which all proceedings shall be conducted. Véase, Apéndice de *Certiorari*, pág. 181.

Como se puede apreciar, las facultades que se le reconocieron al árbitro bajo la preterida cláusula arbitral son amplias. Éste tenía y tiene gran discreción para decidir cómo conducir el procedimiento de arbitraje. Por ende, a la luz de la Estipulación y del propio acuerdo arbitral, entendemos que el árbitro tenía la prerrogativa de emitir un laudo parcial para adjudicar por adelantado la controversia relacionada a la declaración de terminación del Contrato.

De igual manera, contrario a lo planteado por la parte peticionaria, creemos que no existe ningún inconveniente en nuestra jurisdicción para que se permita la revisión de laudos parciales que cumplan con el principio de finalidad en materia de arbitraje comercial. Es decir, procede la revisión judicial de laudos que resuelvan de manera final y definitiva aquellas controversias separadas e independientes de las que estén pendientes por adjudicarse. Ese ha sido el derrotero seguido por los foros federales al interpretar la Ley Federal de Arbitraje, *supra*, que como hemos dicho es la que inspiró nuestra Ley Núm. 376, *supra*.

Por lo tanto, concluimos que **la norma más justa y equitativa para las partes inmersas en un procedimiento de arbitraje es permitir que puedan solicitar la revisión de laudos parciales, que a su vez, sean finales y definitivos**

**y que resuelvan controversias independientes y separadas a las demás.** Ello, en vista de que, por un lado, se le garantiza a las partes una protección en casos en que sea necesaria la intervención judicial para vindicarle sus derechos, y por otro, se asegura que la intervención judicial, al estar guiada por los parámetros de finalidad, definición e independencia, sea una justificada y razonable.[15] **Por eso, los Tribunales de Primera Instancia deberán ser sumamente cautelosos a la hora de evaluar una solicitud de revisión judicial de un laudo parcial, puesto que si dicho laudo no es final y definitivo, y no resuelve controversias separadas e independientes a las demás, el laudo carece de finalidad y, por lo tanto, los tribunales no tendrán jurisdicción para revisarlo.**

Según lo esbozado, resolvemos que le corresponde al Tribunal de Primera Instancia, antes de pasar juicio sobre la revocabilidad del Laudo parcial bajo alguna de las instancias contempladas en el Art. 22 de la Ley Núm. 376,

---

[15] La revisión judicial debe circunscribirse a aquellas situaciones que nuestro ordenamiento contempla. Como es sabido, luego de culminar el trámite ante el árbitro, las determinaciones que éste haga en el laudo son, como regla general, finales e inapelables. Es decir, las cuestiones atendidas en el laudo no pueden litigarse ante los tribunales. *J.R.T v. Otis Elevator Co.*, 105 D.P.R. 195 (1976).

Empero, existen ciertas instancias en las que no está vedada la intervención judicial. Así, la revisión judicial está permitida en aquellos casos en los que las partes convengan expresamente a que el árbitro resuelva la controversia conforme a derecho. *U.C.P.R. v. Triangle Engineering Corp.*, *supra*, pág. 142; *Rivera v. Samaritano & Co., Inc.*, 108 D.P.R. 604, 608 (1979). Además, se permite la intervención judicial bajo la Ley Núm. 376, *supra*, cuando alguna de las partes solicite la confirmación del laudo o la revocación, modificación o corrección de éste. Arts. 21 y 24 de la Ley Núm. 376, 32 L.P.R.A. secs. 3221 y 3224.

*supra*, según alegadas por la parte recurrida en la Demanda, determinar si éste resuelve de forma final y definitiva, al menos una controversia separada e independiente a las que restan por resolverse.

## VI

Por todo lo antes expuesto, se expide el auto de *certiorari* solicitado y se revoca la Resolución recurrida emitida por el Tribunal de Apelaciones. En su consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que proceda de conformidad con lo aquí expuesto. Además, se ordena la continuación del procedimiento de arbitraje con relación al resto de las controversias que no se han adjudicado.

Se dictará Sentencia de conformidad.



Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

VDE Corporation, Iván F. Tort                                  *Certiorari*

    Recurridos

       v.

F & R Contractors Inc.                          CC-2009-0882

    Peticionario

Jorge Pierluisi; Banco
Santander de Puerto Rico

    Recurridos


SENTENCIA


En San Juan, Puerto Rico, a 15 de octubre de 2010.

Por todo lo antes expuesto, se expide el auto de *certiorari* solicitado y se revoca la Resolución recurrida emitida por el Tribunal de Apelaciones. En su consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que proceda de conformidad con lo aquí expuesto. Además, se ordena la continuación del procedimiento de arbitraje con relación al resto de las controversias que no se han adjudicado.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada Señora Rodríguez Rodríguez no intervino. El Juez Presidente Señor Hernández Denton no interviene.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo